[Civ. No. 3512. Fourth Dist. Apr. 22, 1946.]

WILLARD E. CRUMBACK, Respondent, v. JOHN GILBERT MURDOCK et al., Appellants.

Bronson, Bronson & McKinnon for Appellants.

Eckhart A. Thompson and Galen McKnight for Respondent.

BARNARD, P. J.—This is an action for damages for personal injuries resulting from a collision between an automobile operated by the plaintiff and a pickup truck owned by the

defendant Foss and operated by the defendant Murdock. The accident happened on December 2, 1944, and the trial of the action was begun on May 21, 1945. A jury brought in a verdict in favor of the plaintiff for $25,000, and the defendants have appealed from the judgment which followed.

The only point raised is that the amount of damages awarded is grossly excessive and could have been arrived at only through the influence of passion and prejudice. Incidentally, it is argued in this connection that, although conflicting, the evidence on the issue of liability was very close; that the jury was out only forty minutes; and that it follows that the jury must have given no real consideration to the evidence with respect to the extent of respondent's injuries. We do not regard the evidence on this issue as close. Liability clearly appears from the testimony of the defendant driver himself, and it may not be assumed that the jury spent much time on that issue.

Briefly stated, the appellants argue that the evidence clearly shows that the respondent was still improving at the time of the trial, a little less than six months after the accident, and that there is no satisfactory evidence of any permanent disability. It is argued that even the respondent testified that his back was improving and his headaches becoming less frequent; that the doctor called by the respondent testified that a good restoration had been had of the shape of the vertebra which had been broken; and that the doctor called by the appellants testified that he found everything healed and normal, that the prognosis was good, that he could find nothing which would prevent the respondent from resuming his normal occupation but this would depend considerably on the individual, and that the respondent's headache and dizziness condition was subsiding. What the respondent testified in this regard was that he did not then have headaches as often as he did ''the first month or two'' and that the pain in his back was ''less than it was at first.'' This could well be true without indicating a continuing improvement at that time. While the respondent's doctor testified that he considered that there had been a good restoration as far as the shape of the broken vertebra is concerned his testimony, as a whole, indicates that other conditions were not so satisfactory. Even the testimony of the appellants' doctor lends itself to a different interpretation from that which they suggest.

The respondent was 26 years old, with a life expectancy of

38 years. He had a wife and one child and was expecting another. Before entering the military service he had been employed as a truck driver in work which required him to lift and handle heavy timbers. At the time of the accident he was in military service, having passed all physical examinations, and was assigned to duty as a cook, working 17 hours a day every other day. On his off-days he was working in a raisin packing plant where his duties required him to lift heavy boxes of raisins above his head.

In this accident the respondent was pinned under his own automobile with his back in a jack-knifed position, he was taken to a military hospital where he was found to be suffering from a broken back consisting of a compressed fracture of the third lumbar vertebra, from a severe concussion of the brain with possible brain contusion, from gasoline burns, and from contusions and abrasions of the head and body. The respondent testified at the trial that he still had headaches and dizziness, had lost most of his strength, and had been unable to do any work since the accident; that he had continuous pain in his back, which gets worse at times; that he had a headache almost every day and when he walked or overexercised this got worse and he became dizzy; that he had had dizzy spells about five times in the last two or three weeks, and that about six times in the last month he had had spells of nausea, causing vomiting; that a week previously he had been discharged from the military service on account of disability; and that he did not have the headaches as often as he did the first month or two.

An army doctor, who had treated the respondent at a military hospital near Fresno from December 2, 1944, to February 19, 1945, testified that when the respondent was brought to this hospital he was suffering from pain in his back and his head, that he had some gasoline burns, that he had received a blow on the head and that he was in moderate shock. He then testified that there was a spinal fracture, the third lumbar vertebra being crushed, that because of the patient's abdominal condition and low blood pressure, and because of his acute general injuries, they were delayed for four or five days in treating the fracture of his spine; and that in the meantime he was given blood plasma and other treatment. With respect to the treatment for the spine fracture he testified that the patient was strung up by his heels and by his thorax and his head thrown back in a marked hyperextension when the spine

was forcibly manipulated and the fracture sprung back into position; that a plaster cast, extending from his knee to his armpit, was then applied to hold his back in that over-corrected position; that such a cast is usually kept on for six weeks, when a shorter cast is applied; and that this plaster cast is uncomfortable and many patients are not able to tolerate it. There is evidence that after these casts were removed steel braces were applied from his hips to his shoulders. He still wore these braces at the time of the trial and will have to wear them for at least another year and probably two. After about twelve weeks, the respondent was removed from the hospital near Fresno and taken to a hospital at Santa Ana where he remained about thirteen weeks and until shortly before the trial.

While this doctor testified that there had been a good restoration of the fracture insofar as the bone itself was concerned he testified that this referred merely to the shape of the bone and that this ''is not the final answer''; that in such fractures cartilage discs and joints are also injured and that these injuries to the soft tissues in some cases not only produce a painful condition but cause a disability in addition to the fracture itself; that in spine fractures of this type ''between one third and one half of them are not rehabilitated in spite of the best treatment we know, are not rehabilitated''; that in fractures of this type ''the end result is usually accomplished in six to eight months, and in a good percentage of these patients we get a good recovery. However, if there is considerable pain at the end of six months, as there is in this patient, the strong probability is he will have a permanent disability and pain in that back of a fairly high degree.'' He further testified, with respect to the headaches, that he could not tell whether they would continue to grow worse or better. On cross-examination, he stated that he was unable to see that this case was one ''in the upper brackets'' insofar as good results after a fracture are concerned. This doctor again examined the respondent during the trial, after which he testified that he found certain objective symptoms, as distinguished from what the patient told him, which consisted of (1) all motions of his back are performed guardedly and slowly in an attempt to protect his back movement; (2) he has not reestablished the normal curves in his back which is necessary to get a good back that will perform the job it is required to do; (3) that he does have abnormal curves, including one which causes him

to stand off-balance; (4) and that this is associated with a constricture of the muscles controlling his spine movements, and that "as long as that constricture persists, and it may be permanent, he will continue to have pain."

The appellants' doctor, who examined the respondent two days before the trial, testified that the respondent complained of a great deal of pain in the lower portion of his back which was such as to force him to keep his hands behind his back when he was climbing on the table; that when he asked the respondent to go through the usual motions of bending forward and backward and from side to side "he was unable to perform all of these functions in a normal manner"; that when he himself bent the patient forward "the lower portion of the back seemed to be held somewhat by some spasm of muscle; and that "it is possible that some of the pain which he still has at the present time may gradually disappear as time progresses, and the back will stabilize itself as it was before." When asked if he thought the respondent would finally be able to do the work he did prior to the time he entered the army this doctor replied: "The X-ray evidence we have in this case would lead us to expect that. However, the complaints of pain which this man has, it is hard to see how he will be able to go about and do that work unless the pain entirely ceases." He further testified that while it was usual in cases of fractured backs for patients to entirely recover within a year some cases took longer and "in some cases they never recover," that in examining the respondent he found a mild curve in this vertebra "which is sort of rotated somewhat." With respect to the blow on the head which this respondent suffered this doctor testified that "one would have to diagnose it as severe cerebral concussion," and that he was unable to state whether or not there was also a contusion of the brain. When asked for his opinion as to whether or not the respondent will ever entirely recover from his headaches this doctor testified: "Assuming the history is true, and the progress of the headaches cease, I would say that he would have trouble the rest of his days."

In the light of the evidence, which we have but briefly referred to, it cannot be held that it was insufficient to justify an inference that some of the injuries received by the respondent would result in some considerable permanent disability. It may be observed that the testimony of these two doctors, read in its entirety, tends to support that conclusion con-

siderably more than can be disclosed by such short quotations therefrom as are practicable here. There can be no doubt that the respondent suffered from serious injuries which entirely incapacitated him at the time of the trial, and the evidence justifies the inference that considerable permanent disability will result. Under the well known rules, which need not be here repeated, it cannot be said that the verdict exceeds any amount justified by the evidence. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 P. 513].) While the amount of the verdict is large it cannot be held that there is such an absence of evidence as to indicate that it was influenced by passion or prejudice.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.