[Civ. No. 22349. Second Dist., Div. Two. Oct. 22, 1957.]

FLORENCE BUTLER, Respondent, v. JOE DOMINIC PELUSO, Appellant.

George P. Kinkle for Appellant.

Joseph Schecter for Respondent.

MOORE, P. J.—From a judgment of $40,000 for personal injuries suffered by respondent, appellant seeks a reduction of the amount or a reversal for a new trial on the amount. The sole question posed by the appeal is whether the amount of the judgment is excessive.

In February 1955 respondent, then a woman of 70 years, while lawfully walking on the sidewalk along Western Avenue at Third Street in Los Angeles was wrongfully struck by defendant McClelland's automobile as a result of the negligent operation by appellant of his car at the intersection. She was struck by the vehicle as it hurtled onto the sidewalk and pinned her to the ground. Her head protruding, she lay face down in a pool of blood which flowed from her head. She was released by an automobile jack in the friendly hands of the witness Hirsch who conducted a service station nearby. By the automobile on her chest she was caused intense pain and fright.

She was transported to the General Hospital where she remained for 10 days; spent a few days at home and then was placed in the California Hospital from which she was discharged after 10 days and was returned to her home where she was bedridden for six weeks.

In his brief appellant insists that special attention be given to all subjective symptoms and practically argues that each should be demonstrated to be true as related by respondent and that it be shown to this court to have resulted from the impact caused by appellant. The trouble with such contention is that it is an argument he should have made to the jury. They were the finders of the facts. If in their attempt to determine the extent of respondent's injuries that resulted from the automobile collision, they heard the full report by respondent as they were authorized to do, then it was their duty to consider such testimony as to her pain and suffering and if they found it to be true, they properly took it into account in evaluating her injuries. ██ It is not the function of this court to fix values or to weigh the testimony of witnesses who related conditions that resulted from a tortious act. ██ But it is the office of the jury to investigate and determine the extent of injuries suffered by a wrongful act and their verdict will not be disturbed unless it is out of reasonable proportion to such injuries.

██ Prior to the accident respondent was a healthy, vigorous person; had never suffered a serious illness; had never been in a hospital for treatment. She lived alone. She never

had assistance in managing her affairs; did her own housework and usually walked three blocks to do her marketing and bore all bundles to her home. She attended church services and visited friends and entertained them and her relations. Not only was she vigorous of body but her mental faculties were unimpaired.

When struck by the automobile she was knocked unconscious. She sustained a brain concussion. On regaining consciousness she was suffering intense pain. Her fractured pelvis immobilized her while in the hospital and caused "terrible" pain. Four ribs on her right side were fractured; at the time of trial those fractures were stinging and the pain from them caused her entire back to ache. Despite her improvement, she still has backache when she walks and seldom attempts ambulatory exercise. Therefore, she cannot do her shopping, three blocks from home. The brush burn and bruises on her left side also were sore. The pain in her breastbone was so intense that she had extreme difficulty in breathing and this continued for two months after she left the hospital. The blow on her head and the cut sent pain through her head thereafter and such pain continued to sting her head. Her bladder was paralyzed for five days and when she became able to pass urine, the act was accompanied by pain. Her ankle was, by the accident, made unusable and it has not become completely normal and free from pain.

While respondent was confined to her bed at home for the six weeks after returning from the hospital, she was for 10 days attended by a nurse, after which her daughter removed from Palm Springs, lived near, and cared for her mother constantly for three months and continues to serve her.

As a result of the pain she suffers, respondent's activities have been restricted. When she stands long, her pelvic area begins to pain her and also when she attends to her household chores. Because of such pain, respondent cannot take her long, accustomed walks. Because of her fright at the time of the accident, she fears to walk on the sidewalks and is "scared to death" to ride in an automobile.

At the hospital Dr. Rolland found respondent suffering severe pains in her chest and in the fractured pelvis and she had dysuria, painful urination, which continued for a month. She had acute tenderness along the right side of her chest, over the breastbone, over her pelvis and in the region of the bladder. X-rays revealed fractures of the fourth, fifth, sixth, seventh and eighth ribs, a comminuted fracture of two por-

tions of the right side of the pelvis, with several splintering fragments. All muscles and soft tissues in the areas of all fractured bones had been damaged. Also, Dr. Rolland found respondent suffering from frustrated breathing, a condition designated "dyspnea." She had sustained a separation of the ribs from the breastbone and a cerebral concussion. The doctor administered sedatives to respondent. He testified that during the healing process of fractured ribs, the victim suffers pain for about three months and that during the healing of the pelvis pain lasts four months. The healing of respondent's ribs was followed with an offset in their alignment at the points of fracture, and a slight offset resulted from the pelvic fracture.

From the foregoing, it is evident that respondent experienced severe, excruciating pain. At once this projects the inquiry as to her sincerity and accuracy in reporting her sufferings. This is answered by the verdict which fixed her damages at $40,000; by her physician who described her as "a very noncomplaining lady"; by appellant's medical witness who testified that he did "not in the least" gain the impression that respondent did not tell the truth about her injuries: "I thought she was a very cooperative, real type of individual." In denying the motion for a new trial, the judge said: "This woman has suffered excruciating pain and she is not the kind that elaborates. On the other hand, I thought she was exceedingly conservative, which in my way of analyzing testimony, gives it greater value than as though she were up here padding her case. She didn't do any of that." Furthermore, there was no incident during the trial when either respondent or her counsel made an attempt to exaggerate or magnify her injuries or suffering. (See *McNulty* v. *Southern Pacific Co.*, 96 Cal.App.2d 841, 847 [216 P.2d 534].) In such a situation as is presented by this action, the problem of measuring human pain and suffering is not easy of solution. But where the introduction of every item of evidence is attended by a frigid objection by opposition; where exaggerated statements of witnesses will be excepted to, it is not easy to get a false or colored report of facts accepted by a jury of experience and sound discretion.

■ Since there is no fixed standard of compensation, it is reasonable to sustain the verdict of a jury of honorable citizens if it is compatible with human experience and sound discretion. (*Harris* v. *Los Angeles Transit Lines*, 111 Cal. App.2d 593, 598 [245 P.2d 35].)

Before an appellate court can interfere with a judgment on the ground that it is excessive, "the excess must either appear as a matter of law, or be such as to suggest, at first blush, passion, prejudice or corruption on the part of the trier of the fact." (*Holder* v. *Key System*, 88 Cal.App.2d 925, 939 [200 P.2d 98].) The judgment based on a verdict is further secured by the process of the motion for a new trial. When such motion has been denied by the trial judge who has heard the testimony and observed the witnesses, the parties and their counsel, it is his duty to reduce the amount of the judgment if he believes it to be excessive. If he denies the motion he thereby approves the amount of the award. But an appellate court has no such powers. (*Holmes* v. *Southern California Edison Co.,* 78 Cal.App.2d 43, 51 [177 P.2d 32].)

In *Johnston* v. *Long,* 30 Cal.2d 54 [181 P.2d 645] at page 76 the court conceded: "The verdict is undoubtedly high" ($87,575) but (1) because "it is not the function of a reviewing court to interfere with the jury's award . . . unless it is so grossly disproportionate to any reasonable limit of compensation warranted by the facts that it . . . raises a presumption that it was the result of passion and prejudice" and (2) the trial court found that the verdict was not excessive when it refused to disturb the judgment.

In *Mendoza* v. *Rudolf,* 140 Cal.App.2d 633, 636 [295 P.2d 445], it was held that the jurors, as well as the trial judge, "may use their personal experiences and knowledge in arriving at the amount of damages to be awarded under the facts of a particular case, and that damages may be awarded for pain, anxiety, inconvenience,. annoyance, interference with the comfort of plaintiff and his family, and disadvantage suffered by reason of a defendant's acts. . . ." Facts of the several classes present elements of damage of such infinite variety and appeal so differently to men that definite rules cannot be laid down for guidance but the amount must be left to the sound discretion of the trial court to be exercised after a consideration of all the facts in the case. (See *Thompson* v. *Simonds,* 68 Cal.App.2d 151, 162 [155 P.2d 870].) Pain and suffering are not subject to precise measurement by any scale. Their appraisal in terms of money must be left to the jury. (*Sexton* v. *Key System Transit Lines,* 144 Cal.App.2d 719, 722 [301 P.2d 612].) Where plaintiff had been struck by a train, was unconscious for some time, regained consciousness and for 20 minutes groaned and was in severe

pain, the appellate court observed that a "person in great pain and suffering can live a veritable lifetime in but a brief interval. . . . We could not undertake to substitute our judgment for that of the jury and the trial court that $20,000 was not excessive compensation for Miller's conscious pain and suffering. . . ." (*Miller* v. *Southern Pacific Co.*, 117 Cal.App.2d 492, 509 [256 P.2d 603].)

Appellant cites a number of decisions for the purpose of demonstrating that the verdict returned in this action is excessive: *Duvall* v. *Transcontinental & Western Air, Inc.*, 98 Cal.App.2d 106 [219 P.2d 463]; *Pederson* v. *Carrier*, 91 Cal.App.2d 84 [204 P.2d 417]; *Paolini* v. *City & County of San Francisco*, 72 Cal.App.2d 579 [164 P.2d 916]; *Crumback* v. *Murdock*, 74 Cal.App.2d 127 [168 P.2d 25]; *Propper* v. *Chicago, Rock Island & Pacific R. Co.*, 237 Minn. 386 [54 N.W.2d 840, 35 A.L.R.2d 459]; *Kelley* v. *Illinois Central R. Co.*, 352 Mo. 310 [177 S.W.2d 435]; *Gladstone* v. *Fortier*, 22 Cal.App.2d 1 [70 P.2d 255]. It is not made certain from the facts in those decisions that the award in the case at bar is unreasonably more than careful study and sound judgment would dictate. While the sum might be greater than other juries and different courts would have determined to be just, yet, without erroneous rulings of the court or inflammatory argument of counsel, the jury fixed its verdict at $40,000.

█ The law leaves the assessment of damages to the unbiased judgment of the jury. Before its verdict can be set aside by an appellate court, it must appear "so excessive as to indicate that the jury was motivated by prejudice or passion." (*Germ* v. *City & County of San Francisco*, 99 Cal. App.2d 404, 421 [222 P.2d 122]; *Aldrich* v. *Palmer*, 24 Cal. 513, 516; *Risley* v. *Lenwell*, 129 Cal.App.2d 608, 645 [277 P.2d 897].) This is especially so where, in denying a motion for a new trial, the trial judge declined to reduce the amount of the verdict. This occurred in the case at bar. The judge was positive and emphatic in his refusal to alter the verdict. Awards in other cases do not furnish a criterion for the proper award in the instant matter. █ In each case, the type of the injury and the value of the dollar at the time of the injury must be considered by the jury and not what another jury or court has allowed a different person for a different injury.

That the economic conditions of the state and the value of the dollar at the time of the verdict should be considered by the jury in appraising the value of the detriment suffered by

the plaintiff is too well established to require citation of authorities. (See *Estrada* v. *Orwitz*, 75 Cal.App.2d 54, 60 [170 P.2d 43] ; *Gist* v. *French*, 136 Cal.App.2d 247, 274 [288 P.2d 1003].)

The judgment is affirmed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied November 18, 1957.