[Civ. No. 10037.   Third Dist.   Apr. 24, 1961.]

DAN EGGINK, Respondent, v. SHIRLEY ROBERTSON et al., Appellants.

498

Robert A. Eaton and Thomas Reynolds for Appellants.

J. Clinton Peterson, Henry H. Kilpatrick, Dwight C. Ely and S. F. Holstein for Respondent.

SCHOTTKY, J.—Shirley Robertson, doing business as Shirley Robertson Trucking Company, and Carl Archie Stanley, have appealed from a judgment in favor of Dan Eggink in the amount of $120,000 in an action brought by the latter to recover damages for injuries suffered as the result of an automobile accident.

It appears from the record the accident occurred early in the morning on October 20, 1958, on United States Highway 40, in a rural area in Solano County. It was dark at the time of the accident but clear. The pavement was dry and the roadway straight and level. In the vicinity of the accident United States Highway 40 is a divided highway with two traffic lanes in each direction. Dan Eggink at the time was 20 years of age. He was a graduate of a San Jose high school where he was an active participant in athletics. He was a member of the California National Guard. Before the accident Eggink and a friend, Donald Morgan, were on their way to Squaw Valley. Morgan had a yellow Chevrolet pickup truck which was equipped with reflectors as well as taillights. The two left San Francisco about midnight for Squaw Valley. Morgan went to sleep in a sleeping bag in the back of the pickup while Eggink drove. After entering Solano County Eggink became so sleepy he drove off the concrete traffic lanes of the highway and parked some 5 feet off the traffic lanes on an asphalt shoulder. The truck was parked parallel to the highway. Eggink turned off the engine and the lights of the truck, took his sleeping bag, and went to sleep in the rear of the truck. Officers Pyle and Morris of the California Highway Patrol saw the pickup truck parked on the side of the road about 3:30 a.m. when they were on patrol. Officer Pyle "easily" saw the pickup truck in his headlights some 200 feet away.

.Between 5 and 5:30 a. m. appellant, Carl Archie Stanley, an employee of appellant Shirley Robertson, was driving a Peterbilt truck and trailer loaded with empty tomato boxes east on United States Highway 40. Stanley testified he was driving in the right-hand lane of the highway and that he first saw the pickup when he was some 15 feet away. He was unable to avoid the collision and he struck the pickup in the rear. (Stanley did not personally testify, but his deposition was read and the parties stipulated that if he were present he would testify to certain events.)

The highway patrol officers determined that the point of impact was some 4 feet from the concrete traffic lanes. The main damage to the pickup was in the center of the rear end. The left rear fender of the pickup was imbedded under the right fender and bumper of the truck.

Eggink was severely injured. Morgan was killed. Eggink had a broken jaw, a lacerated tongue which was almost severed, a comminuted fracture of the left femur, multiple lacerations and bruises, and a dislocated right hip. The examining oral surgeon said that he found a fracture of the lower left mandible, a fracture of the upper left condyle, a cracked right condyle, and a tongue severely lacerated through the midline. Only about one-half inch of tissue in the area of the genioglossus muscle was holding the severed tissue of the tongue.

Several days after the accident surgery was performed on the tongue. A second operation was performed about a year later. At the time of the trial Eggink still had a speech impediment which would persist until a lump on the tissue of the tongue could be removed. This would require at least one more operation, but this could not be done until an infection in the left leg was cured.

The orthopedic surgeon who operated on Eggink's left leg stated that he drove a medullary pin in the femur from midway in the femur bone to the top of the head of the femur and sutured the thigh muscles which had been ruptured. Six days after this operation an infection developed and an operation was performed to drain infection from the thigh. A second operation was performed in which the cavity was enlarged and evacuated. This bone infection was osteomyelitis and probably will never be cured. At the time of trial the drainage incision had not been closed. Further operations would be necessary. The left leg was shortened one-half inch as a result of the accident. Motion in the knee was greatly

reduced. Eggink had suffered permanent disability. He suffered pain. He was unable to get work because of his disability, though he had tried. His mother testified that her son had fits of depression and was restless and irritable since the accident. The medical expenses incurred up to the time of trial were $7,939.02.

Appellants first contend that the court erred in not granting a continuance when appellant Stanley was unable to be present the fourth day of the trial. Stanley had been present the first three days of the trial but he had been rehospitalized because of a cyanotic and edematous foot and was unable to attend. Trial counsel, not present counsel, for appellants asked for a continuance under the provisions of section 595 of the Code of Civil Procedure. A statement of the evidence to which Stanley would have testified was then read. Counsel for respondent stated that respondent was prepared to admit such evidence would be given and agreed that it could be considered by the jury as if actually given in court. Respondent's counsel then pointed out that section 595 provides: '' [I]f the adverse party thereupon admits that such evidence would be given, and that it be considered as actually given on the trial, . . . the trial must not be postponed.'' It was also agreed that the court should make a statement to the jury, and the court told the jury that ''the Defendant, Carl Archie Stanley, cannot give his testimony in person this morning for the reasons that he is physically unable to be here, which reasons are not in any manner connected with the accident in question here.'' Appellants claim the denial of the continuance was error and prejudicial because Stanley was the only one who could have testified as to what had occurred and that he would have testified that he was on the traffic lane at the moment of impact. The granting or refusal of a continuance is a matter within the discretion of the trial court, and its ruling will not be disturbed unless there is an abuse of discretion. (*Schlothan* v. *Rusalem*, 41 Cal.2d 414 [260 P.2d 68].) We are satisfied that the court did not abuse its discretion in denying the continuance.

Appellants next contend that the court erred in failing to instruct the jury that it was not to draw any adverse inference from the absence of Stanley. No such instruction was requested. A party may not complain on appeal of the failure of the court to give an instruction on a subject where no request was made to the trial court. (*Perry* v. *City of San Diego*, 80 Cal.App.2d 166 [181 P.2d 98];

502

*Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1 [47 P.2d 462] ; *Gould* v. *Samuels*, 132 Cal.App.2d 459 [282 P.2d 566].) ▮ Furthermore, in view of the court's statement to the jury prior to the reading of Stanley's deposition, such an instruction was unnecessary.

Appellants make a vigorous argument that the amount of damages awarded by the jury was excessive and could only have been the result of passion and prejudice...

The measure of damages in an action for personal injuries is the amount which will compensate for all the detriment proximately caused by the negligence of the defendant. (Civ. Code, § 3333.) Damages must in all cases be reasonable (Civ. Code, § 3359), but what is a reasonable amount is a question upon which there may legitimately be a wide difference of opinion. (*Bellman* v. *San Francisco H. S. Dist.*, 11 Cal.2d 576, 586 [81 P.2d 894].) ▮ An allowance of damages is primarily a factual matter, and it is well settled that even though the award may seem large to a reviewing court, it will not interfere unless the allowance is so grossly disproportionate to a sum reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion and prejudice. (*Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 187 [195 P.2d 427].) ▮ As stated in *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724, 735 [81 P.2d 950, 118 A.L.R. 533] :

"While the law furnishes no accurate means of measuring damages in personal injury cases, the rule is well established respecting the power and duty of an appellate court in considering that subject and has been stated as follows: 'The amount of damages in such cases is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and jury on the subject cannot be set aside unless the verdict is "so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury." [Citing cases.]' "

And as this court said in *Bazzoli* v. *Nance's Sanitarium, Inc.*, 109 Cal.App.2d 232, at page 243 [240 P.2d 672] : "... If he [the trial judge] believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them. [Citing cases.] When the question

is raised his denial of a motion for new trial is an indication that he approves the amount of the award. An appellate court has no such powers. It cannot weigh the evidence and pass on the credibility of the witnesses as a juror does. To hold an award excessive it must be so large as to indicate passion or prejudice on the part of the jurors."

Appellants made a detailed and able argument in support of their motion for a new trial, and the trial court in denying the motion stated, "when you consider everything, gentlemen, it can't be said that it [the verdict] was too high, . . . ."

■ In the instant case we have a young man of 20, who was an athlete, permanently lamed. The fracture of the left femur has not healed. The wound is still draining. He has osteomyelitis which is apparently incurable as far as the present state of medical knowledge is concerned as a result of the accident. There was also testimony that the leg may have to be amputated. In addition, the young man must have at least one more operation on his tongue before a speech impediment, also the result of the accident, can be corrected. He was an apprentice plumber (though he was not at his trade), and it is unlikely if he can return to that trade unless the leg heals. Taking into consideration the nature and extent of the injuries suffered by respondent as shown by the record, and hereinbefore detailed, and applying the rules laid down by our appellate courts in numerous cases, we cannot say that the sum of $120,000 awarded respondent was so large as to indicate passion or prejudice on the part of the jury.

■ Appellants next contend that respondent Eggink was guilty of contributory negligence as a matter of law in parking on the asphalt shoulder. We do not agree with this contention. There is no law that prevents one from parking on the shoulder of a highway. There was evidence that the shoulder was not meant for vehicular traffic. There was also evidence that respondent drove as far off of the paved portion of the highway as was practicable.

■ As stated in *Anthony* v. *Hobbie*, 25 Cal.2d 814, at page 818 [155 P.2d 826] : "But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other ; that where there are different inferences that

may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citing cases.]''

And as stated in *Hilbert* v. *Olney*, 17 Cal.App.2d 135, at page 137 [61 P.2d 941]: ''Appellants contend that Hilbert was guilty of contributory negligence as a matter of law in parking his roadster partly on the main traveled road in the rear of the International truck, in violation of this statute, claiming that it was not impracticable for him to have placed the Chrysler altogether off the main traveled portion of the highway. Whether or not this was so would seem to have been a question of fact to be decided by the jury. . . . But, assuming that it was altogether practicable for the Chrysler to have been placed completely off the main traveled portion of the highway, it does not follow, necessarily, that deceased was chargeable with contributory negligence. 'Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.' ''

Appellants contend also that respondent was negligent *per se* in parking the pickup without leaving the parking lights on. Section 24803 of the Vehicle Code provides that outside of a business or residential district and during darkness a rear light shall be displayed upon any vehicle parked or standing upon a highway. The rear light must be plainly visible from a distance of 500 feet from the rear. (Veh. Code, § 24600.) It is clear that the requirement of a lighted rear lamp was not followed by the respondent. The standard of care to which one must conform is usually that of a reasonable man, but the proper conduct of a person under a particular situation may be prescribed by statute. Traffic rules are statutory standards. Failure to conform to the statutory standard raises a rebuttable presumption of negligence which may be overcome by showing that he did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the law. (*Alarid* v. *Vanier*, 50 Cal.2d 617 [327 P.2d 897].) The question whether or not a violation of a statute contributed to an accident is a question of fact except where a court is compelled to say that only one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury can be

drawn. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 590 [177 P.2d 279].) ▮▮▮ Proximate cause was a question of fact here. The pickup truck was parked some 4 feet from the traffic lane. The police officers passed the pickup about 3:30 a. m., but did not stop to set flares or investigate. It is reasonable to assume that they did not think the car a hazard. The officer driving the patrol car saw the pickup some 200 feet before he approached it. This court can take judicial notice of the fact that United States Highway 40 is traveled day and night and it is fairly inferable that many other cars and trucks passed the pickup after it was parked. The jury could find that the violation of the statute did not contribute to the accident and that the sole cause of the accident was the inattentive way Stanley was driving, as he was off the traffic lane and did not see the car until he was some 15 feet away. We believe that a question of fact on this issue was presented to the jury and that the implied finding of the jury that the negligence of Stanley was the proximate cause of the accident is supported by the record.

Appellants contend also that respondent Eggink assumed the risk as a matter of law.

▮▮▮ Assumption of risk will negative liability even if the plaintiff acted with due care. "It is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. . . . ▮▮▮ Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of the risk, . . . ." (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161, 162 [265 P.2d 904].) ▮▮▮ ". . . While a person, if fully informed, may assume the risk even though the dangerous condition is caused by the negligence of others . . . , 'The plaintiff does not assume the risk of any negligence which he has no reason to anticipate, but once he is fully informed of it, it is well settled that the risks arising from such negligence may be assumed.' " (*Rogers* v. *Los Angeles Transit Lines*, 45 Cal.2d 414, 419 [289 P.2d 226].) ▮▮▮ We do not believe that it can be said as a matter of law that respondent should have anticipated that appellant Stanley would have driven his vehicle off of the main traveled portion of the highway, and, accordingly, any question of assumption of risk was a question for the jury. (2 Harper & James, Torts, § 21.7.) Furthermore, the record shows that appellants made no request for

an instruction on assumption of risk and that the jury was given no instruction on the subject. Therefore appellants are hardly in a position to raise the point on appeal.

No other points require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 21, 1961. Schauer, J., was of the opinion that the petition should be granted.