[Civ. No. 23076.   First Dist., Div. Three.   May 11, 1967.] ·

FRED HENNINGER, Plaintiff and Respondent, v. SOUTH-
ERN PACIFIC COMPANY, Defendant and Appellant.

Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson, for Defendant and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Respondent.

SALSMAN, J.—Respondent brought this action against appellant to recover damages for personal injuries. Appellant

admitted its liability, and thus the sole issue presented in the trial court was the amount of respondent's damages. The jury fixed respondent's damages at $650,000. Appellant appeals from the judgment entered upon the verdict.

On December 20, 1963, respondent, a conductor-brakeman for appellant, was injured in the course of his employment. At the time of the accident he was 29.7 years of age. His injuries were extreme. He lost both legs above the knees and was left with very short stumps, four inches on the left side, three and three-quarters inches on the right side. Other relevant facts will be stated hereafter, as they bear upon the various issues raised in the briefs.

Appellant first contends it was denied a fair trial because (1) the trial court refused to permit evidence of its willingness to employ respondent despite his injury and disability; (2) the court refused to permit evidence that would have impeached Dr. Aldes, respondent's medical expert witness, and (3) the court would not permit appellant to show that respondent would not need a full-time attendant, by introduction of evidence that other bilateral amputees get about without assistance.

*The Trial Court Properly Refused to Admit*
*Evidence of Appellant's Offer of Employment*

Appellant attempted to prove that it had offered respondent a job as a bill sorter in its accounting department at $19.22 per day, and that this job was available to him even if he was confined to a wheelchair. The proof was contained in various letters written by appellant to the State Department of Rehabilitation in San Francisco, to respondent, and to respondent's attorney. Respondent objected to the introduction of these letters into evidence on the ground that they were self-serving and hearsay. The court sustained the objection.

The evidence offered was clearly hearsay and as such properly excluded. If appellant had employment available to respondent and was willing to employ him, it could have established these facts through the direct testimony of a company officer or employee called to the witness stand for that purpose. If such a witness had been called, his testimony would have been given under oath, subject to cross-examination, and thus immune to the hearsay objection. But no such officer or employee was called, and the objection urged against the offered evidence was therefore entirely valid.

## Rejection of Evidence Offered to Impeach
## Dr. Aldes Was Also Proper

Respondent's expert medical witness, Dr. Aldes, testified in effect that respondent could never ". . . wear a functional type of prosthesis and be ambulatory." He based his opinion on his experience, on the fact that respondent had very short stumps, and also upon an evaluation of what remained to be done in respondent's case before prostheses could be fitted to him. It was also Dr. Aldes' opinion that respondent would never be able to "wear a functional type of prosthesis, a functional type that he is going to take steps with."

During the direct examination of appellant's expert medical witness, appellant offered to introduce into evidence a motion picture film which purported to show a double amputee walking on hydrocadence legs without the aid of either canes or crutches. Counsel stated that the film was offered solely for the purpose of impeaching Dr. Aldes. The trial judge observed that Dr. Aldes' opinion on the point in issue was limited to his own experience, and accordingly rejected the film as impeaching evidence. This ruling was correct.

It is elementary that a witness may be impeached by contradictory evidence. But the film offered by appellant would not have contradicted the opinion of Dr. Aldes. Dr. Aldes did not testify about the amputee shown in the film, and apparently had no knowledge of him. The film did show that a certain bilateral amputee, about whom little else was known, had been fitted with workable hydrocadence legs. But the film did not contradict Dr. Aldes' opinion concerning respondent, nor did it contradict the witness's experience. It is the general rule, applicable here, that a witness who expresses an opinion based upon his own experience cannot be impeached by the showing of facts never known to him. (*Brown* v. *City of Oakland,* 51 Cal.App.2d 150, 155 [124 P.2d 369].)

### The Refusal of The Trial Court to Permit
### Appellant to Show That Respondent Would Not
### Need The Services of a Full-Time Attendant,
### Although Error, Was Not Prejudicial.

One of the issues at trial was whether respondent needed the services of a full-time attendant, and if so, how much such services would cost. Respondent offered evidence to show that he would never be able to use functional artificial

legs; that he would always be confined to a wheelchair; that he would always require help from others, and that the cost of a paid attendant would be about $25 for an 8-hour shift. He calculated his damages for this item of expense to be $324,000 over the period of his life expectancy. Appellant sought to establish through testimony of its medical expert that other people who have lost both legs have been rehabilitated and are able to get about without an attendant; that polio victims and paraplegics with heavy, useless limbs are able to get about without an attendant, and that therefore respondent would have no need for the services he claimed. The trial court sustained an objection to this evidence. Appellant now contends that it was effectively prevented from meeting respondent's contention that he was entitled to damages in a large sum for this item alone.

Respondent objected to the offered evidence because it was "incompetent, irrelevant and immaterial." It is clear that the evidence offered related to a material point at issue, namely whether respondent, because of his condition and the nature of his injuries, needed an attendant. But the real question is whether the evidence was relevant to the issue presented. In sustaining the objection the trial court commented that: "We don't want a comparison of misfortunes. We are only concerned with this particular type of case and as to what extent, if any, there can be rehabilitation here. We are not concerned with paraplegics and others who have suffered such misfortune."

It would appear that the court felt the offered evidence was not relevant. But relevancy is a relative term. It describes the tendency of offered evidence to prove an assertion of fact. Its application in the field of evidence involves logic and common sense. (See *Larson* v. *Solbakken*, 221 Cal.App.2d 410, 420 [34 Cal.Rptr. 450].) Here the offered evidence would tend to show that respondent would not need an attendant, as he claimed, because logically, if others who are in worse condition do not need the services of a full-time attendant, then perhaps respondent would not need such services. We conclude that the trial court was in error in rejecting appellant's evidence.

Despite the error, however, it is clear that appellant suffered no prejudice. We must look at the record in its entirety, and use care not to focus so intensely upon one portion of it that we lose perspective in viewing the whole body of the evidence. Later in the trial we see that appel-

lant's counsel asked its medical expert if, from the standpoint of rehabilitation, care and re-employment, the cases of persons who had lost the use of their legs from disease, injury or amputation were similar, and the witness answered that they were. The witness further testified that his experience indicated respondent would not need a paid attendant in the future, but would in fact be independent. Thus it appears that, while at one point in the trial the court erroneously excluded relevant and material evidence on a point in issue, the same evidence was later brought to the attention of the jury in but a slightly different context. Moreover, appellant's counsel argued there was no evidence to show respondent's need for "an over-all full-time attendant" and contended that ". . . all of us know people of that kind [paraplegics and polio victims] and who don't have full-time paid attendants." From the permitted testimony of appellant's medical expert that the cases of other unfortunate persons were similar to respondent's, and that respondent would in the future be independent, as well as from the argument of appellant's counsel, the jury could have inferred, using its collective experience, that respondent needed no paid attendant because others did not. Although the trial court erred in rejecting appellant's evidence when offered, in light of later testimony, the arguments made to the jury and the entire record, the error was not prejudicial.

### The Trial Court Correctly Declined to Instruct The Jury That an Award of Damages For Personal Injuries is Not Subject to Income Taxes

■ Appellant next contends the trial court should have instructed the jury that any recovery of damages for personal injuries is exempt from income taxation under both federal and state law. Appellant offered such an instruction, but the trial court rejected it.

The subject of income taxes came into the trial proceedings at various times. For example, taxes on income derived from any principal sum awarded was mentioned by respondent's counsel. Appellant's counsel, in turn, asked about such taxes on annual wage earnings. Counsel for the parties appeared to differ concerning applicability of the tax laws, although, from the record, it is not clear that at any given time each was speaking of the same set of facts. Both sides made limited reference to income taxes in argument to the jury.

There is no doubt that an award of damages for personal injuries is not subject to income taxes. (See Internal Revenue

Code of 1954, § 104; Rev. & Tax. Code, § 17138.) The question at issue here is whether it is reversible error not to so inform the jury, particularly since appellant requested such an instruction.

We think the court was correct in refusing to give any instruction on the subject of income taxes. The majority of courts to consider income tax instructions have concluded they should be rejected. (See *McWeeney* v. *New York, N.H. & H.R.R. Co.*, 282 F.2d 34, 36-39; *Altemus* v. *Pennsylvania R.R. Co.*, 32 F.R.D. 7; *Hall* v. *Chicago & Northwestern R.R. Co.*, 5 Ill.App.2d 135 [125 N.E.2d 77, 50 A.L.R.2d 661]; *Stokes* v. *United States*, 144 F.2d 82, 87; *Chicago & Northwestern Ry. Co.* v. *Curl*, 178 F.2d 497; *Southern Pac. Co.* v. *Guthrie*, 186 F.2d 926, 927-928; see also 2 Harper & James, Torts, § 25.12.) In *Altemus*, the court declared: "In every American case except one, the Courts have held either that the failure to grant such a prayer is not reversible error or, conversely, that the granting of such a prayer is reversible error [citations]." Only one case, so far as we are able to find, has directly held that it is error to refuse an instruction such as that offered by appellant here (*Floyd* v. *Fruit Industries*, 144 Conn. 659 [136 A.2d 918, 63 A.L.R.2d 1378]); in another case (*Dempsey* v. *Thompson*, 363 Mo. 339 [251 S.W.2d 42, 45]) the giving or withholding of such an instruction was held to be a matter of discretion with the trial judge.

In the only case to reach our appellate courts on the issue here presented, California has sided with the majority. (*Atherley* v. *MacDonald, Young & Nelson*, 142 Cal.App.2d 575, 589 [298 P.2d 700].) In *Atherley* this court held that it was not error to refuse to give an instruction to the effect that an award of damages in a personal injury case is not subject to federal or state income taxes. In its opinion the court pointed out that the jury had been instructed on the subject of damages and ". . . was told that it could award compensatory damages only, that is, those damages which would fairly compensate plaintiff for his pecuniary loss. The items of recoverable damage were itemized. The court specifically directed that 'speculative,' or 'conjectural,' or 'remote' damages could not be recovered." Our case is similar. The various elements of special damages were described by the court in its instructions, including damages for medical treatment, hospitalization and attendance, as well as lost earnings and lost earning power. General damages for pain and suffering were also mentioned. The court specifically instructed the

jury to award compensatory damages only. No mention was made of taxes of any kind or nature and, if the jury followed the court's instructions as we must presume they did, the award includes nothing to compensate respondent for any supposed loss because of income taxes, but on the contrary, includes only such items of damage as the court described in detail in its instructions. As will later appear, the award itself is well within the range of respondent's evidence.

### *Alleged Misconduct of Counsel is Not Sustained by The Record*

■ Appellant accuses respondent's counsel of prejudicial misconduct of such magnitude as to require reversal of the judgment. The record does not support this contention.

The first charge leveled at respondent's counsel is that he made a "per diem" argument in asking damages for pain and suffering. Respondent's counsel did argue to the jury, in effect, that an award of $600,000 general damages would be proper because ". . . it is only about forty dollars per day of his life expectancy."

At the time appellant filed its opening brief in this case, the propriety of an argument of this nature was an open question. In *Seffert* v. *Los Angeles Transit Lines*, 56 Cal.2d 498 [15 Cal.Rptr. 161, 364 P.2d 337], the issue was before our Supreme Court but was not directly decided. A minority of the court, however, criticized and condemned the practice. But since *Seffert* was decided the court has announced its decision in *Beogle* v. *Vasold*, 65 Cal.2d 166 [53 Cal.Rptr. 129, 417 P.2d 673]. Under that ruling, the per diem argument is sanctioned. In its closing brief appellant concedes, as it must, that this assignment of misconduct cannot be sustained and has therefore abandoned the issue.

Appellant points to other statements of respondent's counsel which it alleges amount to prejudicial misconduct. For example, during the evidence phase of the case respondent's counsel asked one of his witnesses: "And if he didn't retire at the age of 65 but continued to work to age 70, *as most of these men do.* . . ." (Italics ours.) There was no evidence that most brakemen work beyond age 65 and up to age 70. Thus the question assumed as true a fact not in evidence and was therefore improper in form. Appellant cites *Love* v. *Wolf*, 226 Cal.App.2d 378, 390 [38 Cal.Rptr. 183], condemning this form of interrogation and holding its use in that case to be prejudicial. But on our record we see no

prejudice. When the question was asked, appellant's counsel made a prompt and proper objection. Moreover, he too made a factual assertion before the jury, also unsupported by the evidence. He asserted that most brakemen do not work to age 70. Respondent's counsel continued to assert that they do. The trial judge quickly quelled the dispute. He sustained appellant's objection and admonished the jury to disregard the statements made by counsel. Appellant's motion for a mistrial was denied. It is apparent that the trial judge, who heard it all, concluded that his admonition to the jury fully corrected the result of any possible misconduct on the part of counsel and that neither party had been prejudiced in the brief but spirited exchange.

Appellant also asserts that portions of respondent's argument to the jury amounted to prejudicial misconduct and denied it a fair trial. In argument counsel asserted that appellant's counsel was insincere in pretending not to understand the concept of the present value of money. He also argued that defense counsel's purpose was to save ". . . the railroad every bit of money that has already been set aside, mind you, as a deductible expense of doing business." He characterized defense counsel's suggestion of a verdict of $200,000 as "ridiculous," and labelled appellant's efforts as an attempt to "short change a cripple."

The record leaves no doubt that the argument of respondent's counsel was vigorous and effective. But we cannot say it amounted to prejudicial misconduct for which a new trial should be granted. We are drawn to this conclusion in part by the determination of the issue made by the trial judge in his ruling on appellant's motion for a new trial. Misconduct of counsel as a ground for new trial presents a matter primarily committed to the trial court. (*Healy* v. *Market Street Ry. Co.*, 41 Cal.App.2d 733, 739 [107 P.2d 488].) The judge who presides over the trial, who hears the testimony and the arguments, and whose own experience gives him a fine sense of the general atmosphere of trial proceedings, is in a far better position than appellate judges to evaluate the effect of disputed argument. Thus where, as here, an able and experienced trial judge has denied a party's motion for a new trial, made in part at least on the ground that opposing counsel was guilty of misconduct which denied the moving party a fair trial, the trial judge's determination of that issue will not be set aside on appeal unless it is unquestionably wrong. (*Lafargue* v. *United Railroads*, 183 Cal. 720, 724 [192 P. 538].)

Here we cannot say that the trial judge's ruling was unquestionably wrong, or wrong at all.

█ Finally, even assuming that some of respondent's argument amounted to misconduct, appellant is in no position to complain. No objection was made in the trial court. There was no request that the court admonish the jury to disregard the argument now claimed to be objectionable. It is settled that, where no claim of misconduct is made in the trial court, and the judge is not requested to admonish the jury to disregard the argument deemed improper, complaint may not be made for the first time on appeal. (See *Harper* v. *Vallejo Housing Authority,* 104 Cal.App.2d 621, 627 [232 P.2d 262]; 2 Witkin, Cal. Procedure (1954) p. 1736.) It is true that if the alleged misconduct is so grave that no admonition from the court can remove its prejudicial effect or cure the flaw, an objection and a request for an admonition is unnecessary. (See *Hoffman* v. *Brandt,* 65 Cal.2d 549, 553-554 [55 Cal.Rptr. 417, 421 P.2d 425].) But here the question of misconduct is doubtful at best, and an objection and request for an admonition from the court was clearly necessary in order to save the point for appellate review.

### The Size of The Judgment

█ Appellant's final argument is that the judgment is excessive as a matter of law and hence the judgment should be reduced or reversed and a new trial ordered. This contention must be rejected.

Where the verdict of a jury is attacked as excessive, an appellate court can interfere ". . . only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury." (*Seffert* v. *Los Angeles Transit Lines, supra,* 56 Cal.2d 498, 507.) In the same case, the court said at page 508: "Basically, the question that should be decided by the appellate courts is whether or not the verdict is so out of line with reason that it shocks the conscience and *necessarily implies* that the verdict must have been the result of passion and prejudice." (Italics ours.) (See also *Torres* v. *City of Los Angeles,* 58 Cal.2d 35, 53 [22 Cal.Rptr. 866, 372 P.2d 906]; *Holder* v. *Key System,* 88 Cal.App.2d 925, 939-940 [200 P.2d 98]; *Bondulich* v. *O. E. Anderson Co.,* 210 Cal.App.2d 12, 18 [26 Cal.Rptr. 147]; *Butler* v. *Peluso,* 154 Cal.App.2d 624, 629-630 [317 P.2d 57].)

Obviously an award of $650,000 to one person for personal injuries is a large sum, but whether it is so great as to shock

the conscience of appellate judges and necessarily implies passion and prejudice on the part of the jury depends upon the nature and extent of the victim's injuries, his pain, suffering and humiliation, and the amount of special damages that may have been incorporated in the total award.

In their briefs the parties cite many cases involving injuries more or less similar to those suffered by respondent here, and in which it was contended the damages awarded were excessive. Appellant, of course, cites those cases where damages were found to be excessive for given injuries, and the judgment was accordingly modified or reversed. Respondent, on the other hand, cites cases where verdicts claimed to be excessive were upheld. No useful purpose would be served by a review of such cases in this opinion. In *Daggett* v. *Atchison, T. & S.F. Ry. Co.*, 48 Cal.2d 655, 666 [313 P.2d 557], the court said: "While a reviewing court, in passing upon the question involved here [whether damages were excessive], may consider amounts awarded in similar cases [citations], in the final analysis the qustion in each case must be determined from its own peculiar facts and circumstances [citation] and it cannot be held as a matter of law that a verdict is excessive simply because the amount may be larger than is ordinarily allowed in such cases."

There is no precise mechanical rule by which an appellate court can measure a personal injury award to determine if it is a just and fair one or is excessive. As the court remarked in *Daggett, supra*, each case must be determined on its own peculiar facts and circumstances. This simply means that we must look to the record to see if there is evidence to support the jury's verdict, whatever the amount of the verdict may be. Our task is made relatively easy in this case because of the singular fact that evidence of special damages exceeds in amount the total award.

At the time of respondent's injury he was 29.7 years of age. The fruitful and productive years of his life were before him. In the accident he lost both legs high above the knees. His right stump is only three and three-quarters inches in length, his left one four inches. There was evidence that he will never be able to use functional artificial legs; that he will be confined to a wheelchair for the remainder of his days; that he will require personal assistance in the routine affairs of living, and will never be able to hold gainful employment of a significant nature. In sum, so far as the expected pleas-

ures and satisfactions of life are concerned he has become a mere spectator and is no longer a participant.

Respondent introduced evidence of the following special damages: (1) medical expenses at time of trial $14,680.50; (2) accrued wage loss $11,340; (3) cost of rehabilitation program (one year at $500 per month) $6,000; (4) future wage loss, discounted to present value at 3 percent—$461,000; (5) future cost of a paid attendant, discounted at 3 percent—$324,000. As will be seen, special damages, according to this evidence, amounts to $817,020.50, omitting entirely any amount whatever for general damagés for pain and suffering. There was other evidence from which the jury could have found that respondent's special damages were not as great as claimed. The verdict of the jury is a general one, and we cannot know from its form what amount was in fact allowed for special damages and what portion of the total is for general damages for pain and suffering. But we need not know these details to resolve the issue here presented. When the verdict is examined in light of the catastrophic injuries suffered by respondent, together with the evidence relating to the extent and amount of his special damages, it is apparent that the verdict is not so large as to suggest any element of passion or prejudice in its composition. It is, in fact, well within the range of the credible evidence.

Finally, we must give due weight to the trial judge's view of the verdict. He heard the testimony and observed the jurors throughout the trial. He would be the first to sense whether their verdict was responsive to the evidence or tinged with passion and prejudice. At the conclusion of the trial he told the jurors that, under all the circumstances of the case, their verdict was fair and just. He reconsidered the verdict upon appellant's motion for a new trial. His denial of that motion reaffirmed his conclusion that appellant had a fair trial and that the verdict should stand. We agree.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied June 9, 1967.