406 F.2d 1006
 Ione THOMSON, Cynthia Farver, Walter Thomson, Trustees for dissolved Aero Sales Co., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Walter THOMSON and Ione Thomson, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 22109.
 No. 22109-A.
 United States Court of Appeals Ninth Circuit.
 January 23, 1969.
 
 Walter Thomson, (argued), Los Angeles, Cal., for appellant.
 Edward L. Rogers, Washington, D. C., (argued), Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Lester R. Uretz, Chief Counsel, Lee A. Jackson, David O. Walter, Attys., Washington, D. C., for appellees.
 Before CHAMBERS and ELY, Circuit Judges, and THOMPSON,* District Judge.
 ELY, Circuit Judge:
 
 
 1
 This is a petition to review Tax Court decisions[1] allocating the entire amount received by petitioners in a compromise settlement of a civil action against the United States to ordinary income and allocating also to ordinary income five-sixths of an amount petitioners received in settlement of an antitrust suit. Our jurisdiction rests on Section 7482 of the Internal Revenue Code of 1954. We affirm.
 
 
 2
 Petitioners Thomson are husband and wife. They operated the Texas Tank Company as a proprietorship in the calendar years 1954 and 1955, the two years for which the Commissioner assessed a deficiency because petitioners did not report as income the items in question. The Thomsons are also, together with petitioner Cynthia Farver, trustees for Aero Sales Company, a corporation which has been dissolved.
 
 
 3
 In 1949, Aero Sales Company commenced a civil action against the United States in the Court of Claims for unpaid commissions and for damages resulting from certain alleged defects in scrap metal which petitioners obtained from an agency of the United States. In 1950, the United States commenced a civil action against Aero Sales to collect an alleged obligation evidenced by an unpaid invoice. These suits were settled in 1954, without trial, by the Government's payment to Aero Sales of $1,182. Since petitioners failed to sustain their burden of proving that another designation was proper, the Tax Court ruled that the entire payment was taxable as ordinary income. There is no consideration which moves us to disturb this holding.
 
 
 4
 In 1950, Aero Sales and the individual petitioners, doing business as Texas Tank Company, commenced an antitrust suit against numerous steel companies under the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 15. The complaint alleged that the steel companies conspired to refuse to sell steel products to non-established customers. In 1955, the antitrust action was settled by a compromise payment to petitioners of $47,686.55. The Tax Court found that, since treble damages are automatically awarded in a successful civil antitrust suit, two-thirds of the proceeds was received in lieu of punitive damages and was therefore taxable as ordinary income.[2] Petitioners challenge this determination and assert that the proceeds of the settlement were compensation for injury to business and hence, a nontaxable return of capital.
 
 
 5
 We recently collected numerous authorities to support the basic proposition that
 
 
 6
 "In determining whether receipts are taxable as ordinary income or return of capital it is immaterial whether taxpayer effected collection amicably or by resolving a dispute through compromise or litigation. It is the nature of the underlying claim that controls and not the manner of collection."
 
 
 7
 Spangler v. Commissioner of Internal Revenue, 323 F.2d 913, 916 (9th Cir. 1963). Punitive damages are taxed as ordinary income,[3] and when this case was tried in the Tax Court, petitioners had the burden of proving the portion of the proceeds of the compromise which they claimed to be nontaxable. See Raytheon Production Corp. v. Commissioner of Internal Revenue.[4] They did no more, however, than to point to the progress of the antitrust trial at the time that the settlement was made. The suit was concluded by the compromise after oral arguments on the defendants' motion to dismiss following the presentation of petitioners' evidence. No findings of fact had been made. In the Tax Court, Walter Thomson, one of the petitioners, was the only witness. He could not show any agreed allocation of the proceeds at the time of execution of the compromise. He merely claimed that damages to his business exceeded the amount received in settlement and testified that he accepted the settlement to avoid prolonged litigation, with possible appellate reversal, promising a recovery less than originally sought. The contract of settlement not only failed to specify that all of the consideration represented compensation for lost profits and injury to business, but also it failed to make any allocation whatsoever. Furthermore, petitioners were either unable or unwilling to produce any other evidence that the recovery did not include the punitive type of damages prescribed by Congress.
 
 
 8
 Under the law as it existed at the time of the Tax Court's determination, the Tax Court was left without any alternative. Since petitioners offered no proof as to components of the proceeds, and since any amount received by petitioners from successful antitrust litigation would ordinarily consist of one-third compensatory damages and two-thirds punitive damages, the Tax Court properly resorted to the nature of petitioners' claims to make a reasonable apportionment. Moreover, in making such an apportionment on the basis of the antitrust complaint, the Tax Court employed a method analogous to that approved for determining the punitive damage portion of sums received in compromise of libel suits. See Rev. Rul. 58-418, C.B. 1958-2 at 18.[5]
 
 
 9
 Two years after the Tax Court decision in our case, the Internal Revenue Service adopted procedures which, had they been in existence at the time in question, would have benefited the taxpayers and might possibly have altered the result. Under the present rules, a plaintiff in an antitrust suit who reasonably establishes that his actual damages exceed the amount recovered by compromise is aided by a presumption, in the absence of substantial evidence to the contrary, that no portion of the settlement proceeds represents punitive damages. Technical Release, TIR-919, July 31, 1967, Rev. Proc. 67-33, I.R.B. 1967-35.[6] While it may be regrettable that the present petitioners must be deprived of a beneficial procedural rule recently made available to others, the Tax Court was obliged, as are we, to apply the law which was in effect before the burden of proof was replaced.
 
 
 10
 In determining the nature of the remaining one-third of the settlement proceeds, the Tax Court, applying its best judgment in light of the sparcity of evidence offered by petitioners, allocated one-half to ordinary income and one-half to return of capital.
 
 
 11
 Our scope of review of findings of fact by the Tax Court is limited to the determination of whether those findings are clearly erroneous. Noble v. Commissioner of Internal Revenue, 368 F.2d 439, 445 (9th Cir. 1966); Grace Bros., Inc. v. Commissioner of Internal Revenue, 173 F.2d 170, 173-74 (9th Cir. 1949). In this case, we are unable to conclude that the Tax Court's findings of fact were clearly erroneous or that there was error in the conclusions of law reached from the factual determinations which were made.
 
 
 12
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Honorable Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation
 
 
 [1]
 Thomson v. Commissioner of Internal Revenue, T.C.Memo. 65-237 (1965)
 
 
 [2]
 "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by his sustained * * *." Clayton Act, section 4, 15 U.S.C. § 15
 
 
 [3]
 Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955); Commissioner of Internal Revenue v. Obear-Nester Glass Co., 217 F.2d 56 (7th Cir. 1954),cert. denied, 348 U.S. 982, 75 S.Ct. 570, 99 L.Ed. 764 (1955).
 
 
 [4]
 144 F.2d 110, 113 (1st Cir.),cert. denied, 323 U.S. 779, 65 S.Ct. 192, 89 L.Ed. 622 (1944). Raytheon is analogous to the present case. Although the treatment of punitive damages was not at issue, the entire $350,000 portion attributable to a compromise settlement of antitrust litigation was held to be taxable income. Raytheon Production Corp., like the taxpayers in the present case, claimed damages to its business far in excess of the amount of settlement. Although Raytheon showed a destruction of good will and property in excess of $3,000,000, all of the $350,000 compromise was held to be taxable because Raytheon could not meet its burden to separate the portion claimed to represent return of capital.
 
 
 [5]
 Rev.Rule 58-418, clearly relevant to the method of determination used by the Tax Court in the present case, provides, in part:
 "Under the facts of the instant case, the amount, due to lack of adjudication, is not distinguishable as to the portions allocable to satisfaction of the taxpayer's claim for compensatory damages as distinguished from his claim for punitive damages. Inasmuch as the tax consequences attributable to each claim differ, allocation is necessary and proper. * * * In the instant case, the taxpayer's complaint apparently constitutes the best evidence available to determine a proper allocation. Under such complaint, the taxpayer asked 600x dollars as compensatory damages and 350x dollars as exemplary damages, or a total of 950x dollars. Thus, the amount of compensatory damages asked equaled approximately 63 percent of the total asked and the amount of the exemplary damages approximately 37 percent. In the absence of other evidence, therefore, 63 percent of the amount received in settlement is considered to be in satisfaction of compensatory damages and is excludable from the taxpayer's gross income while 37 percent is considered to represent satisfaction of exemplary damages and is includible in his gross income."
 
 
 [6]
 The relevant provisions of the new Revenue Procedure are as follows:
 "Section 1. Purpose
 The purpose of this Revenue Procedure is to provide general guidelines and procedure to facilitate proper tax accounting for amounts realized by taxpayers in settlement of certain antitrust actions brought under section 4 of the Clayton Act (15 U.S.C. 15).
 * * * * *
 "Section 3. Discussion of General Rules
 To the extent that an amount realized in settlement of an action under section 4 of the Clayton Act is attributable to a taxpayer's claim for the trebling of actual damages which is provided for by that section, it does not represent a restoration of capital but will be included in the taxpayer's gross income. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, [75 S.Ct. 473] (1955), [47 AFTR 162] Ct.D. 1783, C.B. 1955-1, 207.
 "Section 4. Conclusion
 In the case of a regulated public utility realizing amounts in settlement of its claims for treble damages under section 4 of the Clayton Act * * * the Internal Revenue Service will permit the taxpayer to account for such amounts in the following manner:
 .01 Where the taxpayer has reasonably established that the actual damages sustained as a result of the price-fixing conspiracy were in excess of the amounts realized in settlement of the action under section 4 of the Clayton Act, excluding therefrom amounts properly attributable to the recovery of the related legal expenses, it will be presumed, in the absence of substantial evidence of facts to the contrary, that no part of such recovery represents the taxpayer's claim for `punitive' or exemplary damages. Otherwise, the principle stated in section 3.03 above will be applied.
 .02 The taxpayer will be permitted to treat as a return of capital that portion of the amounts realized in settlement (1) which is properly attributable to the actual damages sustained and (2) which is not in excess of the adjusted bases of those assets used in the taxpayer's business which were involved in the suit for damages, but an appropriate adjustment to the bases of such assets in the taxable year of the settlement will be required."
 
 
 THOMPSON, District Judge (dissenting in part):
 
 13
 I respectfully dissent from that portion of the Opinion which approves the allocation of two-thirds of the money received in settlement of the anti-trust action to punitive damages. This I deem to be an arbitrary, mechanical adoption of a formula leading to an improper assignment of two-thirds of the recovery as punitive damages, taxable as ordinary income. Commissioner of Internal Revenue v. Glenshaw Glass Co., 1955, 348 U.S. 426, 75 S.Ct. 473. The Glenshaw case decided the point that a recovery of punitive damages is taxable as ordinary income. The case involved no problem of allocation.
 
 
 14
 The taxpayers' evidence in the antitrust action had been presented during several weeks of trial. At the time of settlement, the action was pending before the Court for decision on motions to dismiss, a prime point of defendants being the bar of statute of limitations. Plaintiffs' proof of damages would have sustained a judgment for actual damages based in part on injury to capital investment and in part on loss of prospective profits far in excess of the net settlement of $47,686.55. The proof of loss of prospective profits was more tenuous and doubtful than the proof of injury to capital investment, but on the record, I cannot disagree with the Tax Court's allocation of the settlement (that portion of it not designated as punitive damages) fifty per cent to recovery of capital and fifty per cent to the recovery of anticipated profits.
 
 
 15
 My quarrel is pointed exclusively at the designation of any of the settlement as punitive damages under these circumstances. The record shows that the taxpayers were not satisfied with the settlement, deeming it grossly inadequate to make them whole for the loss suffered, and they accepted the settlement only because of the advice of their attorney which we are entitled to infer was the consequence of the serious statute of limitations problem which had been argued to the Court.
 
 
 16
 Where, as here, there is substantial evidence in the record showing that the actual damages suffered were substantially more than the amount of the settlement prior to judgment, this, in my opinion, is sufficient to characterize as arbitrary and unreasonable the allocation to punitive damages of any of the settlement sum paid in an anti-trust action.
 
 
 17
 The majority of this Court deems it "regrettable"[1] that the new Internal Revenue Service procedures articulated in Technical Release TIR-919, July 31, 1967, Rev. Proc. 67-33, I.R.B. 1967-35, were not adopted before decision of this case in the Tax Court. I consider the new procedures to be recognition of the essential unfairness and arbitrariness of the Tax Court method of allocation.
 
 
 18
 In any event, the real issue before the Tax Court was what was the best evidence of the underlying nature of the taxpayers' anti-trust action claim which was settled. Spangler v. C.I.R., 1963, 9th Cir., 323 F.2d 913. The complaint may be the best evidence "in the absence of other evidence." See: Rev. Rule 58-418, fn. 4, majority opinion. Over the years, I have come to discount prayers of a complaint as evidence of much of anything other than the highest financial aspirations of the pleader. In this case, there was much better and more probative evidence before the Tax Court. This evidence has been summarized in the first portion of this opinion. It is uncontradicted and persuades me that the finding of the Tax Court that two-thirds of the anti-trust settlement was paid as punitive damages was clearly erroneous.
 
 
 
 Notes:
 
 
 [1]
 Equally "regrettable", I presume, is the fact that the decision in Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, was not rendered until March 28, 1955; that the anti-trust case here involved was settled before March 25, 1955; that before theGlenshaw opinion, tax decisions generally held punitive damages not to be taxable as ordinary income (see Commissioner of Internal Revenue v. Glenshaw Glass Co., 3rd Cir. 1954, 211 F.2d 928); and that under then existing law, there was no taxation reason for the taxpayer to require a specification in the settlement papers that none of the money was paid as punitive damages.