**Kelly B. NILES, by and through his Co-Conservators, David F. Niles and John A. MacMahon, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. C–80–1733–MHP.**

United States District Court, N. D. California.

Aug. 11, 1981.

Jerry H. Robinson, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiffs.

G. Jeffrey S. Niesen, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## OPINION

PATEL, District Judge.

This is an action for refund of federal income taxes in which both parties have moved for partial summary judgment. Jurisdiction is based on 28 U.S.C. §§ 1346(a)(1) and 1402(a)(1).

The essential facts of the case are not in dispute. In 1970 plaintiff Kelly Niles, then eleven years old, suffered a head injury during a playground altercation. Subsequent negligent medical care left plaintiff with irreparable brain damage. Mr. Niles is now a quadriplegic, entirely unable to speak or to care for himself and requiring the services of three full-time attendants.

He suffers severe medical disorders including epilepsy, osteoporosis, and scoliosis which have necessitated surgery in the past and most likely will do so in the future. Mr. Niles' life expectancy remains normal. His intellect, tested at 140 prior to the injury, is active and intact.

A personal injury action in 1973 resulted in a lump sum jury award of $4,025,000. The verdict was attacked as excessive, but the California Court of Appeal affirmed. *Niles v. City of San Rafael*, 42 Cal.App.3d 230, 116 Cal.Rptr. 733 (1974). Defendant Internal Revenue Service ("IRS" or "Service") does not contest the fact that the personal injury award was properly excluded from Mr. Niles' gross income under section 104(a)(2) of the Internal Revenue Code ("Code").[1]

In 1978 the IRS asserted income tax deficiencies against Mr. Niles for the calendar years 1973 through 1976 in the total amount of $644,341. The Service bases the deficiency on the grounds that: (1) certain medical expenses incurred since the personal injury action were deducted improperly; (2) certain expenses relating to Mr. Niles' care were not deductible medical expenses within the meaning of section 213 of the Code; (3) a portion of the personal injury award represented reimbursement for past medical expenses and therefore was taxable as gross income; (4) a portion of the award was allocable to the loss of Mr. Niles' future earnings and thus constituted taxable income; and (5) the post-judgment interest paid to Mr. Niles by the defendants in the personal injury action also was taxable income. Mr. Niles paid the deficiency assessed for 1975. He subsequently filed this refund action.

Only three issues are before the court at this time on the motions for partial summary judgment. They are:

(1) Does section 213(a) of the Code preclude deductions of future medical expenses compensated by personal injury awards?

(2) Does the Service have the authority to allocate a portion of a lump sum jury award to cover future medical expenses?

(3) Given the applicable standard of review, has either plaintiff or defendant established the absence of a genuine issue of material fact, such that summary judgment is appropriate?

The parties represent that all other issues have been or soon will be resolved.

## APPLICABILITY OF SECTION 213(a) TO PERSONAL INJURY AWARDS.

Section 213(a) of the Code allows the deduction of medical expenses "not compensated for by insurance *or otherwise* . . ." (emphasis added). Briefly stated, the IRS contends that a portion of Mr. Niles' lump sum personal injury award can be allocated to cover future medical expenses and that this portion of the award represents compensation within the meaning of section 213(a). Because Mr. Niles has been compensated for future medical expenses, argues the Service, he is precluded from deducting medical expenses incurred since receipt of the award until such expenses exceed the allocated amount. The IRS contends that section 213(a) must be so interpreted to prevent Mr. Niles from receiving a double tax benefit unintended by Congress.

Plaintiff contends that personal injury awards are excluded from taxable income because they represent a *return of capital*. By enacting this exclusion, Congress intended to place an injured party, through financial reimbursement, in the same position as he or she was in prior to the loss. Plaintiff reasons that the exclusion therefore cannot be considered a form of economic benefit and should not interfere with Mr. Niles' deduction of future medical expenses.

It is unnecessary to reach the merits of this issue because consideration of the second question will be dispositive of the motions for summary judgment.

1. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

## AUTHORITY OF THE IRS TO ALLOCATE LUMP SUM PERSONAL INJURY AWARDS.

Regardless of whether the statutory language of section 213(a) precludes deductions of future medical expenses for which compensation has been received in the form of personal injury awards, the threshold question is whether the IRS has the authority to allocate a portion of a lump sum jury award in a personal injury action to future medical expenses. The issue is one of first impression. Defendant correctly asserts, however, that in refund actions, plaintiff has the burden of proving "all facts necessary to establish the illegality of the collection." *Niles Bement Pond Co. v. United States*, 281 U.S. 357, 361, 50 S.Ct. 251, 252, 74 L.Ed. 901 (1930); *Roybark v. United States*, 218 F.2d 164, 166 (9th Cir. 1954).

The IRS does not contest the fact that the jury in the *Niles* personal injury action returned an unallocated award. Citing several revenue rulings and numerous cases, however, defendant argues that the taxpayer is required to allocate a portion of lump sum verdicts to future medical expenses, and that where the taxpayer has failed to allocate, the Service will do so based on the best evidence possible. The Service further claims that such action is consistent with its past administrative procedure. In the case of Mr. Niles, the IRS contends that the best evidence available is plaintiff's own hypothetical itemization of the award presented to the California Court of Appeal to rebut the challenge of excessiveness. Using plaintiff's breakdown, the IRS asserts that $1,588,176 of the award must be allocated to future medical expenses.

As correctly noted by plaintiff, the defendant has not provided this court with any authority to substantiate its position, with the exception of Revenue Ruling 79–427, 1979–2 C.B. 120. Rather, the rulings and cases relied upon by the IRS concern the deductibility of past medical expenses, *e. g.*, *Cooney v. Commissioner*, 30 T.C.M. (CCH) 845 (1971); *Morgan v. Commissioner*, 55 T.C. 376 (1976); Revenue Ruling 75–230, 1975–1 C.B. 93, or settlements and judgments already allocated by agreement of the parties involved or by the court, *e. g.*, *Spangler v. Commissioner*, 323 F.2d 913 (9th Cir. 1963); Revenue Ruling 75–232, 1975–1 C.B. 94. Both situations are inapposite to the case at bar.

The amount of medical expenses paid and deducted by a taxpayer prior to settlement or judgment can be ascertained precisely, as it is a sum certain. Revenue Ruling 75–230, 1971 C.B. 93. Allocating a portion of a lump sum settlement to such prior expenses therefore can be accomplished without speculation as to the amount involved. The Service itself emphasizes this fact in Ruling 75–230 which pointedly contrasts the specificity of past medical expenses with the speculative nature of damages sought for pain and suffering. Similarly, there can be no question about the amount of any portion of a settlement or verdict that has been explicitly allocated to future medical expenses.

Plaintiff argues that the same cannot be said for an allocation of a general jury verdict to future medical expenses. This court agrees. Permitting the IRS to allocate a portion of a lump sum award to such expenses essentially is allowing the Service to hypothesize the manner in which the jury evaluated the evidence in determining what it felt to be the appropriate amount of damages to award Mr. Niles. Speculation of this nature runs contrary to the essential characteristics of the general verdict. As Judge Frank, a leading critic of the general verdict system, noted, "[t]here are ... three unknown elements which enter into the general verdict; (a) the facts; (b) the law; [and] (c) the application of the law to the facts." *Skidmore v. Baltimore & O. R. R. Co.*, 167 F.2d 54, 60 (2d Cir. 1948); *see generally* Statement of Mr. Justice Black and Mr. Justice Douglas *re* the 1963 Amendments to Rules of Civil Procedure for the United States District Courts, 374 U.S. 865, 867, 83 S.Ct. 43, 44 (1963); Wright, *The Use of Special Verdicts in Federal Courts*, 38 F.R.D. 199 (1965); Green, *The Submission of Special Verdicts in Negligence Cases*, 17 U.Miami L.Rev. 469

(1963); Comment, *Special Verdicts: Rule 49 of the Federal Rules of Civil Procedure*, 74 Yale L.J. 483 (1965). It is because the general verdict "affords no satisfactory information about the jury's findings," 167 F.2d at 56, that courts traditionally have refrained from engaging in the kind of speculation proposed by the IRS and instead have accorded particular deference to them. *See, e. g., Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); *Lang v. Texas & Pac. Ry.*, 624 F.2d 1275, 1278 (5th Cir. 1980).

■■■ For example, where a matter is tried on alternate theories of recovery and a general verdict rendered, appellate courts will not "speculate on what particular ground the jury may have found against [the] plaintiff . . . ." *Hope v. Arrowhead & Puritas Waters, Inc.*, 174 Cal.App.2d 222, 227, 344 P.2d 428, 431 (1959). *See also United N. Y. & N. J. Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 619, 79 S.Ct. 517, 520, 3 L.Ed.2d 541 (1959) ("a new trial will be required, for there is no way to know that the invalid claim . . . was not the sole basis for the verdict"); *accord, Morrissey v. National Maritime Union*, 544 F.2d 19, 26–27 (2d Cir. 1976). In California particularly, there is longstanding judicial deference to general verdicts. A general verdict will be upheld if sufficient evidence supports at least one of several alternate theories of recovery. This is true even where there is little or no evidence to sustain another theory also submitted to the jury. *Gillespie v. Rawlings*, 49 Cal.2d 359, 369, 317 P.2d 601, 607 (1957); *Louisville Title Ins. Co. v. Surety Title and Guar. Co.*, 60 Cal.App.3d 781, 786–87, 132 Cal.Rptr. 63, 67 (1976). If the verdict is appealed, the California courts refuse to conjecture about jury deliberations, holding instead that appellants' remedy was to have requested a special verdict at the time of trial. *Rodgers v. Kemper Constr. Co.*, 50 Cal.App.3d 608, 617, 124 Cal.Rptr. 143, 148 (1975); *McCloud v. Roy Riegels Chems.*, 20 Cal.App.3d 928, 936–37, 97 Cal.Rptr. 910, 915 (1971).

■■■ Similarly, where a jury verdict is attacked as excessive, all presumptions are in favor of the award, *Bertero v. National General Corp.*, 13 Cal.3d 43, 61, 529 P.2d 608, 621, 118 Cal.Rptr. 184, 197 (1974), because "[t]he amount of damages is a fact question . . . committed to the discretion of the jury," *Seffert v. Los Angeles Transit Lines*, 56 Cal.2d 498, 506, 364 P.2d 337, 342, 15 Cal.Rptr. 161, 166 (1961). A reviewing court will interfere only if the amount "is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury." *Id.* at 507, 364 P.2d at 342, 15 Cal.Rptr. at 166; *accord, Uva v. Evans*, 83 Cal.App.3d 356, 363–64, 147 Cal.Rptr. 795, 800 (1978). The existence of passion or prejudice is to be determined by the entire record, including the evidence, in each case. *Daggett v. Atchison, T. & S. F. Ry.*, 48 Cal.2d 655, 666, 313 P.2d 557, 564 (1957); *Neumann v. Bishop*, 59 Cal.App.3d 451, 491, 130 Cal.Rptr. 786, 813 (1976); *Henninger v. Southern Pac. Co.*, 250 Cal.App.2d 872, 883, 59 Cal.Rptr. 76, 83–84 (1967). Under these circumstances, therefore, a hypothetical breakdown of the general verdict is simply one means of demonstrating that substantial evidence supports the amount of the award. *Compare Seffert v. Los Angeles Transit Lines*, 56 Cal.2d 498, 506, 364 P.2d 337, 342, 15 Cal.Rptr. 161, 166 (1961), *with Torres v. City of Los Angeles*, 58 Cal.2d 35, 54, 372 P.2d 906, 918, 22 Cal.Rptr. 866, 878 (1962), *and Neumann v. Bishop*, 59 Cal.App.3d 451, 489–92, 130 Cal.Rptr. 786, 812–14 (1976). Appellate courts, however, are quite cognizant that such allocations are only "estimates," *see, e. g., Seffert v. Los Angeles Transit Lines*, 56 Cal.2d at 506, 364 P.2d at 342, 15 Cal.Rptr. at 166, and that it is impossible to discern from a general verdict just how the jury apportioned the amount of damages to arrive at the total sum awarded, *Henninger v. Southern Pac. Co.*, 250 Cal.App.2d 872, 884, 59 Cal.Rptr. 76, 84 (1967). Thus, hypothetical itemizations of general verdicts are regarded merely as useful tools in determining whether the substantial evidence standard has been met and not as an accurate documentation of the jury's own apportionment of the damage awarded.

The Service contends that the concepts embodied in Revenue Rulings 75–230, 1975–1 C.B. 93, and 75–232, 1975–1 C.B. 94, together require it to allocate a lump sum award to future medical expenses based on the best evidence possible. Citing Revenue Ruling 79–427, 1979–2 C.B. 120, the Service further argues that the best evidence possible in cases involving unallocated personal injury awards is the amount of future medical expenses theoretically allocated by the plaintiff. By adopting plaintiff's own itemization of the award, which itemization is consistent with the pleadings and supported by extensive evidence and testimony at trial, the IRS maintains that the amount attributable to future medical expenses can be ascertained with certainty.

At first blush defendant's reasoning is attractive. It is, however, untenable. A clear reading of Revenue Rulings 75–230 and 75–232 does not lead to the conclusion that the IRS may allocate a portion of general verdicts to future medical expenses. As plaintiff correctly points out, both Rulings concerned pre-established figures. The Service does not explain, nor do we understand, how rulings permitting allocations involving pre-established figures justify the IRS in attributing a portion of unallocated lump sum personal injury awards to future medical expenses, whenever these expenses are an element of damages.

Reliance on Revenue Ruling 79–427 in support of the Service's novel position is unacceptable. This Ruling admittedly is based on the very facts of this case. The court will not allow the Service to take advantage of a self-serving ruling, and therefore it will not be followed. *Estate of Morgan v. Commissioner*, 52 T.C. 478, 484 (1969), *aff'd per curiam*, 448 F.2d 1397 (9th Cir. 1971); *Pauley v. United States*, 11 A.F.T.R.2d 955, 960 (S.D.Cal.1963). *Cf. Estate of Lang v. Commissioner*, 613 F.2d 770, 776 (9th Cir. 1980) (though court gives some weight to established, reasonable revenue rulings, it will not defer to an unreasonable ruling promulgated during the life of the controversy at issue).

Defendant's contention that it has authority to use plaintiff's hypothetical itemization of the jury verdict is the most promising rationale it has offered. In determining whether a lump sum represents ordinary income or a return of capital, the courts traditionally have looked to the underlying nature of the claim, asking "[i]n lieu of what were the damages awarded?" *Raytheon Prod. Corp. v. Commissioner*, 144 F.2d 110, 113 (1st Cir.), *cert. denied*, 323 U.S. 779, 65 S.Ct. 192, 89 L.Ed. 622 (1944); *Spangler v. Commissioner*, 323 F.2d 913, 916 (9th Cir. 1963); *Farmers' & Merchants' Bank v. Commissioner*, 59 F.2d 912, 913 (6th Cir. 1932). "[T]he nature of the recovery is to be determined from the claims made in the pleadings or complaint filed in the prior action and the issues and evidence there presented to the jury." *State Fish Corp. v. Commissioner*, 48 T.C. 465, 474 (1967) (citations omitted). However, the Service's reliance on this line of reasoning is misleading in the context of the present action.

As plaintiff correctly argues, the nature-of-the-claim test and the pleadings and evidence in the underlying action have been employed only to determine the characterization of the *entire* verdict or settlement for tax purposes. *E. g., Raytheon Prod. Corp. v. Commissioner*, 144 F.2d 110 (1st Cir.), *cert. denied*, 323 U.S. 779, 65 S.Ct. 192, 89 L.Ed. 622 (1944). They have not been used to allocate lump sum awards into component parts unless the apportionment can be made with relative certainty. Thus, for example, in *Thomson v. Commissioner*, 406 F.2d 1006 (9th Cir. 1969), two-thirds of a lump sum settlement in an antitrust action was allocated to ordinary income because, by virtue of the treble damages statute, 15 U.S.C. § 15, that proportion represents as a matter of law the amount of punitive damages received in successful antitrust actions. 406 F.2d at 1008. *See also Spangler v. Commissioner*, 323 F.2d 913, 915 (9th Cir. 1963) (amount allocated "among three elements of the judgment in accordance with the ratio between each of the elements and their sum"); Revenue Ruling 75–230, 1975–1 C.B. 93.

In this matter, however, the court is concerned with a lump sum verdict that cannot be allocated into component parts with any degree of certainty. Although it is not unlikely that the jury took into consideration future medical expenses in determining the amount of the award, it would be presumptuous of either the IRS or this court to assume to what degree and with what result. Nor can it reasonably be said that plaintiff's own itemization of the verdict lends insight into the jury's evaluation process. The breakdown was merely a hypothetical allocation submitted to rebut the attack of excessiveness and should be treated only as such.

Contrary to defendant's allegations, allocating lump sum jury verdicts in personal injury actions has not been a long-standing administrative practice of the service. Indeed, the cases cited by the Service support the opposite conclusion. In not one instance have the IRS or the courts allocated a lump sum verdict when an apportionment could not be made with relative certainty. Furthermore, plaintiff has cited two Letter Rulings which unequivocally indicate that the Service's past administrative position was not to allocate lump sum personal injury awards to disallow future medical expenses.[2]

In Letter Ruling 6207314840A (July 31, 1962), a jury awarded the taxpayer $20,000 actual and $7,500 punitive damages. The taxpayer entered into a settlement agreement pursuant to which he received an unallocated amount of $25,000. The Service allocated the settlement into actual and punitive damages on the basis of the ratio of these damages awarded in the jury verdict.

Regarding the deductibility of future medical expenses, the Service stated:

The taxpayer's favorable court verdict, and settlement with the other party, made no specific provision for reimbursement to them for medical expenses, but was merely a settlement made for any and all damages which they received in account of damages and injuries to their persons and property, actual and punitive. Accordingly, they may deduct their medical expenses in all years involved, subject to the provisions of section 213 of the 1954 Code, without offsetting any amount of the settlement against such expenses. . . .

The Service reiterated its position three years later in Letter Ruling 6510284440A (October 28, 1965):

The release did not allocate any portion of the settlement to reimbursement [of] . . . medical expenses. Since it thus appears that [the] medical expenses have not been "compensated for by insurance or otherwise," we . . . hold that no portion of the settlement received . . . need be offset against any medical deduction [to be taken] within . . . section 213.

These rulings express the same policy that is reflected in the cases defendant cites on its behalf. When an allocation for tax purposes could be accomplished with reasonable certainty, such as using the jury's award as the basis to apportion a subsequent lump sum settlement into punitive and actual damages, the Service allocated. In the absence of such certainty, the IRS has never attempted to segregate an award into component parts.

## APPROPRIATENESS OF SUMMARY JUDGMENT

A movant for summary judgment must demonstrate the absence of any genuine issue of material fact, and that he is entitled to prevail as a matter of law. *Linn Gear Co. v. NLRB*, 608 F.2d 791, 793 (9th Cir. 1979); *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 63 (9th Cir. 1973); Fed. R.Civ.P. 56(c). In this case, the essential facts are not in dispute. On the issues of law, plaintiff has met his burden by demonstrating clearly that the Internal Revenue Service has no authority whatsoever to allocate a lump sum jury verdict to future

---

2. While letter rulings have no precedential force, I.R.C. § 6110(j)(3) they may be used as evidence of the Service's past administrative practice. *See, e. g., Rowan Companies, Inc. v. United States*, —— U.S. ——, —— n.17, 101 S.Ct. 2288, 2296 n.17, 68 L.Ed.2d 814 (1981).

medical expenses. Adopting plaintiff's hypothetical itemization of the award does not provide the requisite certainty necessary for apportioning a lump sum verdict. Accordingly, plaintiff's motion for partial summary judgment is granted and defendant's motion is denied.

IT IS SO ORDERED.